GRIFFITHS, In re. See Case No. 3,540.

GRIFFITHS (COLLENDER v.). See Case No. 3,000.

GRIFFITHS (HAYFORD v.). See Case No. 6,264.

GRIFFON, The (GREENAWAY v.). See Case No. 5,789.

## Case No. 5,826.

### GRIGG v. The CLARISSA ANN.

[2 Hughes, 89.] [1]

Circuit Court, E. D. Virginia. 1877.

ADMIRALTY—JURISDICTION.

The admiralty jurisdiction attaches where there is no other question than that of title to a ship, and no pretence of a maritime contract or a marine tort; and this unquestionably so where the ship is or has been afloat.

[Cited in The G. Reusens, 23 Fed. 404.]

In admiralty. An involuntary petition in bankruptcy was filed in the Eastern district of New York on the 14th November, 1873, against Daniel Dolton. On the 21st of the same month he was adjudicated a bankrupt. In due course of proceedings, Rufus T. Grigg was appointed assignee; and, on the 16th January an assignment of the effects of the bankrupt was made to the assignee. Among the bankrupt's property was the sloop Clarissa Ann, which, before the assignment to the assignee, the bankrupt had brought off from New York to Norfolk, and has kept here ever since. After long inquiry and search, the assignee found the sloop here; and, claiming title, libelled the sloop in admiralty, praying that possession be delivered to him. A petition is filed by a material-man, and also one by two seamen, for amounts due them, aggregating about $140.

HUGHES, District Judge. Whether the admiralty jurisdiction attaches where there is no other question than that of title to a ship, is no longer a matter of doubt in this country. For a very long period in England the admiralty court exercised jurisdiction in cases of titles to ships where the rights could

2 [From 10 N. B. R. 456.]
1 [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

be determined by actions of detinue or trover at common law, and decided questions of disputed title without reserve. After the Restoration, however, it was informed by the higher common law courts that such matters were not cognizable before it; and, after that time, it was very reserved in taking cognizance of such cases (2 Dod. 289); "submitting to authority rather than reason." But the statute 3 & 4 Vict. c. 65, § 4, restored the authority which the court of admiralty had thus abrogated; and, in England, that court has since taken cognizance of petitory actions as well as possessory, for ships; that is to say, actions to try the mere title, as well as actions concerning the possession of ships incidental to proceedings in rem affecting them. In Virginia, as early as 1659–60, the court of admiralty had authority by express statute to try questions of title; and generally, in this country, the original jurisdiction of admiralty to entertain petitory suits for ships has never been laid aside or successfully disputed. Here there has never been felt that jealousy of the admiralty jurisdiction which has been exhibited in England; and the decision of the English courts on admiralty jurisdiction, during the century and a half preceding the present reign, are not authority here. But the courts of the two countries are not in accord on the subject of petitory actions concerning ships. The leading case in this country is that of The Tilton [Case No. 14,054], decided by Justice Story, which gives a complete exposition of the learning and law of the subject. The authoritative case settling the law of the subject for this country is that of Ward v. Peck, 18 How. [59 U. S.] 267. There, all the justices were present but one, and the decision was concurred in by all except one. The dissenting justice raised the point that the question was merely that of title to a ship, there being no pretence of a maritime contract or a maritime tort; that it was a question clearly within the ordinary and settled jurisdiction of the common law courts, triable by an action of detinue or of trover at law, or bill in equity; that there was nothing in the fact that the subject of the action was a ship to give jurisdiction to the admiralty court; and that if the court could try the right of title in the case under trial, it could do so although the ship were still on the stocks, and never had and never should touch the water. In the face of this energetic and plausible protestation of the dissenting justice, the supreme court sustained the jurisdiction of the admiralty court in the case before it, declaring that in this country, where the admiralty have not been subject to such jealous restraints as the supreme courts of common law had thrown around the admiralty court in England, the ancient jurisdiction over petitory suits or causes of property has been retained. Before this decision, in The Sarah Ann [Case No. 12,342]. affirmed by 13 Pet. [38 U. S.] 387, the question of jurisdiction to

entertain a petitory suit had not been raised. The American authorities on the general question are Taylor v. The Royal Saxon [Case No. 13,803]; The Friendship [Id. 5,123]; The Tilton [Id. 14,054]; [Ward v. Peck] 18 How. [59 U. S.] 267. The English authorities are 1 Vent. 173, 308; 2 Saunders, 26; 2 Lev. 25; 2 Barn. & C. 244; 1 Hagg. Adm. 81, 240; 2 Dod. 41, 258; 2 Browne, Civ. & Adm. Law, 130; 3 C. Rob. 133; 1 Show. 179.

I will give an order for the delivery of the vessel to the assignee, on bond being filed for the payment of any decree that may be rendered in favor of the material-men and seamen.